**DERMAMED, INC., Plaintiff,**

v.

**SPA DE SOLEIL, INC. and Mega Peel, L.L.C., Defendants.**

No. Civ.A. 00–2648.

United States District Court,
E.D. Pennsylvania.

June 14, 2001.

---

Dennis George, Dennis George & Associates, Philadelphia, PA, for Dermamed, Inc., plaintiff.

Alan L. Spielman, Alan L. Spielman, Ltd., Philadelphia, PA, Georgetta H.R. Rainey, Ricks Rainey Attys at Law, Los Angeles, CA, for defendants.

Alan L. Spielman, Alan L. Spielman, Ltd., Philadelphia, PA, pro se.

### MEMORANDUM AND ORDER

TUCKER, District Judge.

## I. BACKGROUND

This action arises from allegations of trademark infringement, unfair competition, and violations of the Lanham Act. Plaintiff, DermaMed, Inc., is the manufacturer of the "Mega Peel," a microdermabrasion system designed to evenly and safely exfoliate the skin without chemicals or lasers. Defendants, Spa de Soleil, Inc. and Mega Peel, L.L.C., are the manufacturers of a micro-epidermal skin system also named "Mega Peel," that performs a substantially similar skin treatment to Plaintiff's product.

Plaintiff adopted the "Mega Peel" mark in early 1999, and filed an application for registration with the United States Patent and Trademark Office in June 1999. In November 1999, Plaintiff became aware of Defendants' infringing use and sent repeated cease and desist letters. Defendants refuse to acknowledge Plaintiff's trademark application was filed prior to their first alleged use and sale on July 23, 1999. They assert that the name "Mega Peel" was reserved in the office of the Secretary of State in California. On April 11, 2000, Defendants filed a Notice of Opposition with the Trademark Trial and Appellate Board.

Defendants agreed via stipulation to be preliminarily enjoined from use of the "Mega Peel" mark and default judgment has been entered against them for failure to answer. However, Defendants have filed numerous motions since the default judgment was entered.

On February 20, 2001, Defendants filed a Motion to Dismiss and/or Change Venue, Motion to Set Aside Entry of Default, and a Motion to Set Aside Stipulation and Order.[1] On March 29, 2001, Plaintiff filed an Answer to these motions. On April 23, 2001, Defendants filed a Reply.

## II. DISCUSSION

■ In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406.[2] *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 878 (3d Cir. 1995). Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper. *Id.* Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case. *Id.*

■ Venue is proper in Pennsylvania because a substantial part of the claim arose here. *28 U.S.C. § 1391(b).* That is, the Defendants marketed their product here, sold their product to at least one customer here, and Plaintiff felt the brunt of the harm in Pennsylvania. *Plaintiff's Answer to Defendants' Motions* at 19, 21, 22. Moreover, this case may have been properly brought in California because that is where all Defendants reside. *28 U.S.C. § 1391(b).* Therefore, California is a proper venue to which this case can be

---

1. The Motions to Set Aside Entry of Default and to Set Aside Stipulation have previously been resolved by this Court in its Orders dated April 26, 2001.

2. Traditionally, the question of personal jurisdiction should be decided before a court turns to the issue of venue. *See Gallant v. Trustees of Columbia U.,* 111 F.Supp.2d 638, 640

(E.D.Pa.2000). However, in this case, the Court finds that the Defendants have consented to jurisdiction in the Eastern District of Pennsylvania by signing a stipulation agreement with the Plaintiff, which was given full force and effect by the Court in its Order of April 26, 2001.

transferred, if deemed to be in the interests of justice and for the convenience of the parties. *28 U.S.C. § 1404(a)*. Consequently, section 1404(a) is controlling on this issue. Section 1404(a) is intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30–31, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

■ In deciding a motion to transfer venue, after first determining that the alternative forum is a proper venue, the court must then determine whether the balance of convenience clearly weighs in favor of a transfer. *Natl. Paintball Supply, Inc. v. Cossio,* 996 F.Supp. 459, 463 (E.D.Pa.1998). The burden of establishing the need for transfer rests with the movant. *Jumara* at 879. Moreover, such motions are not to be liberally granted as the Plaintiff's choice of venue is not to be lightly disturbed. *Natl. Paintball Supply* at 462.

■ In considering convenience, courts consider the parties' residences, the residence of potential witnesses, the situs of events giving rise to the lawsuit, the location of records and documents and all other practical problems that make a trial of the case easy, expeditious and inexpensive. *Natl. Paintball Supply* at 463. Transfer is not warranted, however, if the result is merely to shift the inconvenience from one party to the other. *Id.*

■ Defendants claim that all of the corporate records at issue here are located in California. *Defendants' Memorandum of Law* at 9. Most of the witnesses, they assert, including Plaintiff's potential witnesses are located in California. *Id.* Moreover, as a small business with limited financial resources, litigating this matter in

Pennsylvania will impose a significant burden on them. *Id.* Plaintiff, not surprisingly, argues that the same considerations apply to it, and therefore, giving due deference to their choice of venue, there is no reason to transfer this case to California.

Upon review of the papers filed in this matter, it is hard to see how litigating this case in Pennsylvania will impose an undue burden on the Defendants. For example, in Defendants' verified Notice of Opposition to the Trademark Application filed by DermaMed before the United States Trademark and Patent Office, Defendants assert they are "one of the largest marketers of cosmetic goods, spa treatments accessories and machinery and equipment in the beauty and cosmetics field." *Notice of Opposition* at 3. Moreover, "[i]ts goods have earned an enviable reputation through many years of sales and of advertising, using its logo and name on many products and beauty/spa equipment, which is well known in the trade." *Id.* Such assertions belie Defendants claims that they are a small business with limited financial resources.

Furthermore, in the same document, they candidly admit that both the Plaintiff and the Defendants "are apparently located in the same geographical region of the United States and have the use and benefit of effecting sales of the machine over the Internet, thus potentially enhancing the scope of its distribution and sale." "Hence, their goods will be offered for sale through the same channels of trade to the same customers." *Id.* at 3–4. Again, this undermines Defendants' argument that it is inconvenient for them to litigate this claim in Philadelphia. They are apparently prepared to (and probably actually do) market their product here, so being forced to defend allegations of trademark violations here is not oppressive.

While it is true that some or all the documents and many of the witnesses may be in California, this by itself is not enough to transfer venue. Rather, it is only if witnesses are unavailable for trial and documents incapable of being produced in the forum that the convenience of parties carries sufficient weight to render transfer of venue appropriate. *Omnikem, Inc. v. Shepherd Tissue, Inc.*, 2000 WL 486610 at *5, 2000 U.S.Dist. LEXIS 5268 at *17 (E.D.Pa. Apr. 26, 2000). Here, there is no allegation of this constraint and no reason to believe that such a situation is likely.

Based on the foregoing, the Court denies Defendants' Motion to Dismiss and/or Change Venue.