**SUNGARD RECOVERY SERVICES, LP,**

v.

**FULTON BELLOWS & COMPONENTS, INC.**

No. CIV.A. 01–5007.

United States District Court, E.D. Pennsylvania.

Jan. 28, 2002.

**550**

Steven G. Bazil, Bazil & Associates, Exton, PA, for Plaintiff.

Ronald P. Schiller, Elizabeth J. Feeney, Piper, Marbury, Rudnick & Wolfe, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Defendant, Fulton Bellows & Components, Inc. moves for dismissal of this breach of contract action for lack of personal jurisdiction and venue pursuant to Fed.R.Civ.P. 12(b)(2) and (3), and/or for abstention in deference to the pending action between the parties in Tennessee. For the reasons which follow, the motion shall be granted.

#### Statement of Facts

The instant lawsuit arose out of a "Recovery Services Agreement" which Plaintiff entered into on November 1, 1995 with one of the defendant's predecessors-in-interest, Robertshaw–Tennessee. Under this agreement, in exchange for a monthly payment of $845.00 Plaintiff agreed to provide data backup capabilities and other related services to Defendant's facility in Knoxville, TN in the event of a "disaster".[1] Although the term of the original contract was for five years, Plaintiff alleges that this original term was extended twice by the parties[2] such that it was effectively extended to run through August 31, 2004.

---

1. A "disaster" is defined in Paragraph A(1) of the contract as "any unplanned event or condition that renders Subscriber unable to use a Location for its intended computer processing and related purposes."

2. According to the complaint, Robertshaw–Tennessee was acquired by Siebe Automotive of Windsor, England in July, 1994 and Fulton

Bellows acquired Siebe on or about March 7, 2000. (Complaint, ¶¶ 12–14). Although none of the purported contract extensions were executed by Fulton Bellows, Fulton Bellows did execute a Consent to Assignment agreement whereby it agreed to be bound to the terms of the Agreement as entered into by Siebe. (Complaint, ¶ 15).

According to the complaint, by letter dated June 6, 2000, Defendant informed Plaintiff that it was terminating the Recovery Services Agreement effective September 6, 2000. Although Plaintiff responded via letter of June 28, 2000 that it could not accept Defendant's request to terminate, Defendant has not paid the monthly fees required under the Agreement since July 25, 2000. Defendant commenced an action for declaratory judgment, breach of contract and violation of the Tennessee Consumer Protection Act on August 14, 2001 and service was effectuated on Sungard's registered agent in Tennessee that same date. On August 27, 2001, Plaintiff brought this suit in the Court of Common Pleas of Chester County seeking damages under the theories of breach of contract and unjust enrichment. Service was effectuated via mail on September 4, 2001 and Defendant removed the case to this Court on October 3, 2001. As noted above, Defendant now moves to dismiss this case pursuant to Rules 12(b)(2) and (3).

### Legal Principles Governing Motions under Rules 12(b)(2)and (3)

 It has long been recognized that the initial burden of raising the defense of lack of personal jurisdiction falls upon the defendant or else it shall be deemed to have been waived. *See, National Paintball Supply, Inc. v. Cossio,* 996 F.Supp. 459, 460 (E.D.Pa.1998). Thereafter, once a defendant has raised a jurisdictional defense, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. *Mellon Bank (East) PSFS National Ass'n. v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992). The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state. *Id.; Carteret Savings Bank v. Shushan,* 954 F.2d 141, 146 (3d Cir.1992). This is because due process requires that

the defendant have "minimum contacts" in the forum state and that the exercise of jurisdiction comport with traditional notions of fair play and substantial justice. *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir.2001), quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Supreme Court has further stated that minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. *Id.,* quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

 Personal jurisdiction may be either general or specific. A defendant is subject to general jurisdiction when it has continuous and systematic contacts with the forum state. *General Electric Co. v. Deutz Ag,* 270 F.3d 144, 150 (3d Cir.2001), citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In contrast, specific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should "reasonably anticipate being haled into court in that forum." *Remick, supra,* quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In other words, specific jurisdiction is established when a nonresident defendant has purposefully directed his activities at a resident of the forum and the injury arises from or is related to those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *General Electric, supra.* In determining jurisdiction over a breach of contract claim, the courts must consider the totality of the circumstances, including the location and charac-

ter of the contract negotiations, the terms of the contract, and the parties' actual course of dealing. *Remick*, 238 F.3d at 256, citing *Mellon Bank v. Farino*, 960 F.2d at 1223.

■ In this case, according to the affidavit of Linda Williams, Defendant's Director of Information Systems, Defendant is a Delaware corporation with its only place of business located in Knoxville, Tennessee. Defendant does not have any offices, manufacturing plants, sales representatives or any facilities or personnel in Pennsylvania nor is it qualified to do business as a foreign corporation in Pennsylvania. All communications, billings, notices and other contacts from Sungard to Defendant were to its office in Knoxville, Tennessee. Defendant's contacts and communications to Plaintiff were to its offices in Alphareta, Georgia, which is the Sungard facility closest to Defendant's operations and where the Recovery Services Agreement contemplated that the emergency services contracted for would be provided to Defendant in the event of a disaster. Given that the contract's terms were negotiated by its predecessors-in-interest, Defendant has provided no details on the location and character of the contract negotiations and Plaintiff has likewise provided no such information.

Plaintiff, for its part, asserts in its brief in opposition to the defendant's motion to dismiss that specific jurisdiction should be found to exist here because (1) Defendant "was aware that if it encountered a computer disaster it might have to use Sungard's disaster recovery services located within Pennsylvania," (2) Defendant "agreed that the Agreement would be governed by Pennsylvania law" (in Paragraph D.10), (3) "pursuant to § D.7 of the Agreement, in the event of a disaster, Fulton Bellows was to contact Sungard at 1285 Drummers Lane, Wayne, Pennsylvania, 19087," and (4) "[a]s a direct and proximate result of Fulton Bellows' failure to remit payments, Sungard incurred economic harm within Pennsylvania . . . as a result of Fulton Bellows' action outside this Commonwealth . . ."

While we agree with Plaintiff that there is no basis upon which to find general jurisdiction, we find that its argument as to specific jurisdiction is fatally flawed in that Plaintiff has adduced no evidence to support its assertions.[3] This fact notwithstanding, however, we further find that, even if proven, Plaintiff's assertions are not sufficient to withstand the Defendant's motion. For one, there is a clear distinction between a choice of law clause and one delineating a choice of forum. While the defendant obviously agreed that the terms and conditions of the Recovery Services Agreement were to be construed in accordance with the laws of Pennsylvania and agreed that notification of any computer "disaster" was to be made to Plaintiff's corporate headquarters in Wayne, PA, we cannot see how such an agreement equates to consenting to having any disputes which may arise thereunder litigated within the territorial boundaries of Pennsylvania.

Similarly, while Fulton Bellows may indeed have been "aware" that if a computer disaster occurred, it "might have to use Plaintiff's disaster recovery services located within Pennsylvania," Section A.2 of the contract nevertheless indicates that the contracted-for recovery services were to be provided at either the subscriber's (defendant's) facility, a mobile data center or to any Sungard facility where Defendant's

---

**3.** Plaintiff has provided this court only with *argument* in its Memorandum in Opposition to Defendant's Motion to Dismiss Complaint or for Stay of Proceedings. Unlike Defendant, it has not attached any affidavits or other documentary evidence to support its position.

needs could be accommodated within 48 hours after Sungard received notification that a "disaster" had occurred. We can find nothing in the Agreement itself which specifies Pennsylvania as the location from which the data recovery services would be provided in the event of an emergency.

 Finally, while Defendant may indeed have foreseen that its cancellation of the Recovery Services Agreement would cause economic harm to the plaintiff in Pennsylvania, we cannot find that this very minimal contact, without more and despite Pennsylvania's strong interest in providing a forum for their injured residents, is sufficient to justify the imposition of *in personam* jurisdiction over this defendant. *See, Elbeco, Inc. v. Estrella de Plato Corp.*, 989 F.Supp. 669, 678 (E.D.Pa.1997). Consequently, the motion to dismiss for lack of personal jurisdiction must be granted here.[4]

An order follows.

### ORDER

AND NOW, this day of January, 2002, upon consideration of Defendant's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for a Stay of Proceedings and Plaintiff's Response thereto, it is hereby ORDERED that the Motion is GRANTED and Plaintiff's Complaint is DISMISSED for the reasons set forth in the preceding Memorandum Opinion.

---

**4.** We are cognizant of the Third Circuit's mandate that each claim be analyzed with respect to whether sufficient minimum contacts exist between the forum state and the defending party. *See, Remick v. Manfredy, supra.* Here, however, Plaintiff has provided only argument and no *evidence* as to either of its claims for breach of contract or unjust enrichment. Accordingly, we conclude that the plaintiff has failed to meet its burden of showing jurisdiction as to both of its claims for breach of contract and unjust enrichment.

Furthermore, while we need not reach Defendant's alternative arguments, we would nevertheless find abstention in this matter to be appropriate given that the Chancery Court for Knox County, Tennessee appears to have first obtained jurisdiction in the parallel action which, by Plaintiff's own admission, arose "out of the same transactions and/or occurrences set forth in the Plaintiff's complaint and Defendants' Answers herein ..." (Exhibit "A" to Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss Complaint, or in the Alternative for a Stay of Proceedings.) *See: Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 890 (3d Cir.1997).